# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN MARCUS ZINMAN, | Case No.  1:25-cv-00426-FRS (BAM) (PC) |
| Plaintiff, | ORDER DENYING MOTION FOR RECONSIDERATION OR NOTICE OF APPEAL AS MOOT <br> (ECF No. 23) |
| v. | |
| GALLOWAY, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION |
| Defendant. | |
| | FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM <br> (ECF No. 14) |
| | **FOURTEEN (14) DAY DEADLINE** |

## I.    Background

Plaintiff Justin Marcus Zinman ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff initiated this action on April 11, 2025. (ECF No. 1.)  The original complaint was screened on May 9, 2025, (ECF No. 12), and Plaintiff filed a first amended complaint on May 23, 2025, (ECF No. 14).  Prior to screening of the first amended complaint, Plaintiff filed several motions to join exhibits and claims to the first amended complaint, as well as a plethora of other motions and supplemental exhibits.  (ECF Nos. 7, 10, 11, 13, 16, 18, 19, 21.)  The various motions were addressed by the Court's January 27, 2026 order,

1

which ultimately granted leave for Plaintiff to file a second amended complaint.  (ECF No. 22.)

Currently before the Court is Plaintiff's "Motion for Reconsideration or Notice of Appeal," filed February 6, 2026.[1]  (ECF No. 23.)  In the motion, Plaintiff requests reconsideration of the Court's January 27, 2026 order as "dispositive, improper and/or conflicting/confusing."  Plaintiff contends that the previously-assigned Magistrate Judge, citing Ninth Circuit authority, "basically informed [Plaintiff] that he would have to file the claims raised in the FAC separately from the claims which [Plaintiff] seeks to raise as described in a Motion for Leave to File Joinder."  (*Id.* (emphasis in original))  Plaintiff contends that the preservation of judicial economy cited in the Court's January 27, 2026 order as the basis for requiring Plaintiff to file "**one** cohesive pleading setting forth all facts and exhibits he wishes to include in the second amended complaint", (ECF No. 22, p. 3 (emphasis in original)), should not be sufficient reason to supersede Ninth Circuit authority or previous Court direction, and is simply too confusing.  Thus, Plaintiff requests that the Court reconsider granting the relevant motions in a manner consistent with previous directions.  Moreover, Plaintiff states that he is "prepared to Stand on the FAC anyways (additional claims are a separate, though related, action)."  (*Id.*)

## II.    <u>Motion for Reconsideration or Notice of Appeal</u>

Plaintiff's motion for reconsideration or notice of appeal is denied, as moot.  Plaintiff has indicated his intent to stand on the first amended complaint as filed, essentially withdrawing his prior requests to file additional exhibits, or "joint complaints."  (ECF No. 23, p. 1.)  Plaintiff was granted the opportunity to include all facts and exhibits he wished to include in an amended complaint, and has expressly chosen to stand on the existing first amended complaint.

To the extent Plaintiff contends that the Court's order was in contradiction to Ninth Circuit authority or previous guidance provided, Plaintiff's arguments are unavailing.  Plaintiff requested leave to file joinder, which he characterized as a "joint complaint" to the first amended complaint in this action, raising additional claims as a "separate, though related, action."  (*See*

---

[1] The second page of the filing is a note addressed to the Clerk regarding a document recently filed in another pending action, *Zinman v. Cal. Bd. of Parole Hearings*, 1:25-cv-00687-KES-HBK, and the Court's admonishment to Plaintiff that death threats can provide a basis for dismissal.  (ECF No. 23, p. 2; ECF No. 22, pp. 6–8.)  The Court declines to address, in the instant action, whether Plaintiff's filing in *Zinman v. Cal. Bd. of Parole Hearings* warrants further action from the Court.

2

ECF Nos. 18, 19, 23.)  Plaintiff may proceed on a single complaint in a single action.  If Plaintiff wishes to file a separate complaint raising different claims, he must do so by filing a separate lawsuit.[2]  Plaintiff may not proceed on multiple complaints in one action, even if both complaints are proceeding against the same defendant.  If Plaintiff wished to raise additional claims against Defendant Galloway in a single suit, Plaintiff was provided the option to do so by filing a single, cohesive pleading.  (ECF No. 22); Fed. R. Civ. P. 18(a).  Plaintiff has elected not to do so.

Accordingly, the Court denies Plaintiff's motion for reconsideration of the Court's order granting Plaintiff leave to file a second amended complaint as moot, in light of Plaintiff's indication of his intent to stand on the first amended complaint.

The first amended complaint, filed May 23, 2025, (ECF No. 14), is therefore before the Court for screening.

**III.    Screening Requirement and Standard**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

---

[2] To the extent Plaintiff is requesting permission to file a complaint in a new and separate action, Plaintiff does not need permission from the Court in the instant action to do so.

for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**IV.    Plaintiff's Allegations**

Plaintiff is currently housed at the California Substance Abuse Treatment Facility ("SATF") in Corcoran, California, where the events in the complaint are alleged to have occurred. Plaintiff names Oscar Galloway, Chief Executive Officer, California Correctional Healthcare Services at SATF, as the sole defendant.

In Claim 1, Plaintiff alleges retaliation against the right to refuse services/treatment. Plaintiff alleges that at SATF, Defendant Galloway is responsible for implementing healthcare policy under the Complete Care Model ("CCM"). Through this policy, all CDCR inmates, including Plaintiff, are considered patients and subject to CCM policies/practices. As part of Defendant Galloway's CCM, patient treatment exists within a framework of the "health home." In the health home, the patient's responsibility for healthcare is entirely subordinated to a CCHCS representative, or a team of them. Patients may comply or cooperate with decisions or recommendations made on their behalf, but the patient has no significant existence in the health home apart from CCHCS.

Since Plaintiff refused blood pressure medication, after refusing dental services, Plaintiff has been subject to a continuous pattern of harassment and intimidation. Plaintiff was called to a window every morning for nearly two months to refuse medication, intimidated by staff (see 602), and constantly harassed by nurses about having blood pressure checked (see attached stack of ducats), all as a matter of policy by Defendant Galloway's CCM.

In Claim 2, Plaintiff alleges denial of access to medical services/treatment. Plaintiff alleges that Defendant Galloway is responsible for overseeing how consent forms are implemented/reflect policy, for seeing to it that employees like R. Cogburn are trained properly, and he is the one who personally signed off on both of Plaintiff's accepted 602s.

///

4

After an old filling fell out of Plaintiff's tooth and the tooth became infected, Plaintiff requested a dental appointment.  Upon encountering the consent form that must be signed to access dental services (attached to Case No. 1:24-cv-01320-CDB), Plaintiff was ultimately forced to refuse services because, in a manner apparently consistent with the CCM, the form required patients to "comply" with "all recommendations" of the dentist, "while under [their] care." Moreover, the form includes no provision for achieving informed consent or for asking questions. Cogburn interpreted asking questions as being "argumentative" per his notes.  In refusing to sign the consent form, Plaintiff stated that he could only promise a "willingness to comply" provided that he be dutifully informed of the situation and that any recommendations not go against personal or professional restrictions.  Plaintiff even tried to informally resolve this issue.

Plaintiff contends that the consent form is/was a kind of extra cost to access services. Namely, the cost is the compromise of one's integrity at the expense of preserving their health. By creating such a transaction, CCHCS's contractual obligation to freely provide healthcare services seems to be impaired.  This form, combined with its object, were so offensive to Plaintiff's uncompromised integrity that it caused his blood pressure to spike at around 170 systolic and ultimately it prevented him from freely accessing healthcare services.  If Galloway would have had the form approved under a framework which comported with federal law/constitutional rights, and would have trained his employee to be more sensitive to constitutional rights, this would not have happened.

As relief, Plaintiff seeks the following:

1. Declare that Plaintiff was retaliated against for refusing treatment as a matter of policy, in violation of the First Amendment.

2. Declare that CDCR inmates do not automatically forfeit their rights to take responsibility for their health.

3. Order Defendant Galloway to amend the CCM so that it affords patients/inmates a meaningful ability to refuse services/treatment and/or opt-out of being a de facto "patient" without being retaliated against.

///

5

4. Declare that the Dental Consent Form deprived Plaintiff of a public right by making him choose between integrity and health which is a cruel and unusual punishment in violation of the Eighth Amendment.

5. Order Defendant Galloway to amend the dental consent form as suggested.

6. Compensate Plaintiff's business in legal fees.

7. Any other relief.

**V.    Discussion**

**A.    Exhibits**

Plaintiff's first amended complaint is six pages in length, and includes 44 pages of exhibits.  Most of the exhibits are not incorporated by reference in the first amended complaint, or are referenced in vague terms that provide little guidance as to the location or significance of the referenced document (e.g. "see 602" when portions of at least four different grievances are attached to the complaint or "see attached stack of ducats").

While "much liberality is allowed in construing pro se complaints, a pro se litigant cannot simply dump a stack of exhibits on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain of papers, waiting to be unearthed and refined into a cognizable claim." *Lam v. Cal. Dep't of Corr. & Rehab.*, No. 1:23-CV-01167 BAM PC, 2023 WL 8701254, at *2 (E.D. Cal. Dec. 15, 2023), report and recommendation adopted, No. 1:23-CV-1167 JLT BAM PC, 2024 WL 201269 (E.D. Cal. Jan. 18, 2024) (quoting *Samtani v. City of Laredo*, 274 F. Supp. 3d 695, 698 (S.D. Tex. 2017)).  "The Court will not comb through attached exhibits seeking to determine whether a claim possibly could have been stated where the pleading itself does not state a claim.  In short, [Plaintiff] must state a claim, not merely attach exhibits." *Stewart v. Nevada*, No. 2:09-CV-01063-PMP-GWF, 2011 WL 588485, at *2 (D. Nev. Feb. 9, 2011).

Plaintiff was previously advised that the Court is not required to review exhibits attached to the amended complaint when screening the complaint, and Plaintiff's claims should be clearly stated on the form itself.  (ECF No. 12, p. 9.)  To the extent Plaintiff relied upon more detailed allegations set forth in any portion of the attached exhibits, the Court declines to sift through the

unreferenced pages to determine if a cognizable claim is stated therein.  The analysis below is thus based on the factual allegations set forth in the first amended complaint only.

**B.    Challenge to Prison Policy**

The crux of Plaintiff's complaint is a challenge to the CCM policy implemented by Defendant Galloway.  Plaintiff has failed to allege facts demonstrating that the policy itself is unconstitutional on its face or that it is a repudiation of Plaintiff's constitutional rights.

1.    Facial Challenge

A constitutional challenge to a policy is "'facial' [if] it is not limited to plaintiff['s] particular case, but challenges application of the law more broadly. . . ." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (facial challenges "reach beyond the particular circumstances of these plaintiffs.")  Facial challenges are disfavored. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008).  "A facial challenge to a [policy] is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [policy] would be valid.  The fact that the [policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *United States v. Salerno*, 481 U.S. 739, 745 (1987).

Here, Plaintiff has not alleged sufficient facts demonstrating that the CCM policy as implemented always violates the Eighth Amendment, no matter to which inmates, institutions, or medical conditions the policy is applied.  Plaintiff alleges in a conclusory fashion that Defendant Galloway, through the CCM, essentially insures that patients are "prisoners" to CCHCS as much as they are to CDCR, allowing the exercise of more influence over inmates, and creating immense potential for harm.  Plaintiff provides no factual support for these conclusions or that Defendant implemented or created the policy with the intention to allow or require retaliation against Plaintiff or any other inmate.

As Plaintiff has not included factual allegations that the policy would be unconstitutional as applied in all situations, Plaintiff has not pled a cognizable claim against Defendant Galloway that the CCM policy is facially invalid under the Eighth Amendment.

///

2.    As Applied Challenge

"'[A] [policy] . . . may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question.'" *Little v. Streater*, 452 U.S. 1, 16 (1981) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)). Thus, to support an "as applied" challenge, Plaintiff must show that his individual circumstances make the general application of the CCM policy unconstitutional. *See Doe v. United States*, 419 F.3d 1058, 1063 (9th Cir. 2005).

Here, Plaintiff alleges that Defendant Galloway's CCM policy prevented him from accessing dental care after Plaintiff refused to sign the consent form as written, resulting in retaliation against Plaintiff, again as a matter of CCM policy.

With respect to the consent forms, Plaintiff alleges that although the consent forms are implemented/reflect policy, Plaintiff "was ultimately forced to refuse services" due to his refusal to sign the consent form drafted pursuant to the CCM. However, Plaintiff alleges only that the consent form was drafted "in a manner apparently consistent with the CCM." Moreover, Plaintiff admits that he then chose to refuse further treatment to avoid compromising his integrity by signing the consent form as written. As discussed below, Plaintiff's choice between accepting dental treatment and "uncompromised integrity" was not forced, nor did the consent form constitute an "extra cost" preventing him from freely accessing healthcare services.

As to Plaintiff's retaliation claim, Plaintiff provides only a single conclusory allegation that the retaliatory conduct alleged—calling Plaintiff to a window every morning for two months for medication he would refuse to take, intimidation by staff, and harassment from nurses about having his blood pressure checked—were performed pursuant to the CCM policy. Such a conclusory allegation, without more, is insufficient to demonstrate that the alleged retaliation was the result of the CCM policy, or that Defendant Galloway knew of and disregarded an excessive risk of serious harm to Plaintiff's health and/or safety by continuing to apply the CCM policy to Plaintiff.

Accordingly, Plaintiff has not pled a cognizable claim against Defendant Galloway that, as applied to Plaintiff, the CCM policy is invalid under the Eighth Amendment.

8

### C.    Failure to Train or Supervise

A "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–90 (1989). To establish a failure-to-train/supervise claim, a plaintiff must show that "'in light of the duties assigned to specific officers or employees, the need for more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policy-makers . . . can reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).

Ordinarily, a single constitutional violation by an untrained employee is insufficient to demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional violations by untrained employees," *id.*, unless the need for training is "so obvious" and "so likely to result in the violation of constitutional rights," that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury," *Canton*, 489 U.S. at 390.

To the extent Plaintiff alleges that Defendant Galloway failed to train Dr. Cogburn "to be more sensitive to Constitutional rights," resulting in Plaintiff's refusal to sign the consent form and ultimately refuse dental treatment, Plaintiff fails to state a claim. Plaintiff fails to allege what more or different training was required with respect to the consent form such that a failure to provide such training amounts to deliberate indifference. Even assuming that any constitutional violation occurred with respect to the consent form incident, Plaintiff fails to demonstrate that it was more than a single constitutional violation rather than a pattern of violations by untrained employees.

### D.    First Amendment – Retaliation

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v.*

*Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Silva*, 658 at 1104; *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Adverse action taken against a prisoner "need not be an independent constitutional violation. The mere threat of harm can be an adverse action." *Watison*, 668 F.3d at 1114 (internal citations omitted). A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Id.* The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. The plaintiff must allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal." *Watison*, 668 F.3d at 1114. A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

Plaintiff fails to state a cognizable claim for retaliation. Plaintiff alleges that after refusing dental services, he has been subject to a continuous pattern of harassment and intimidation, specifically he was called to a window every morning for nearly two months to refuse medication, intimidated by staff, and constantly harassed by nurses about having his blood pressure checked, all as a matter of policy by Defendant Galloway's CCM. First, it is not apparent that the conduct alleged constitutes an adverse action, or that Plaintiff suffered some other harm that is "more than minimal" as a result of such actions. In addition, rather than constituting retaliation for refusing medical services or treatment, it appears the actions complained of in fact permitted Plaintiff to refuse the proffered high blood pressure medication for nearly two months. Finally, Plaintiff has not alleged how the conduct is related to Defendant

10

Galloway's CCM policy.  The conclusory allegation that such actions were performed "as a matter of policy" is not sufficient to state a cognizable claim for relief.

### E.   Grievance Process

To the extent Plaintiff alleges that Defendant Galloway violated his rights solely by signing off on Plaintiff's grievances or otherwise denying his requests for resolution through the administrative grievance process, Plaintiff cannot pursue any claims against prison staff based solely on the processing and review of his inmate appeals.

Plaintiff does not have a constitutionally protected right to have his appeals accepted or processed.  *Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir. 1988).  The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993); *see also Wright v. Shannon*, No. 1:05-cv-01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the First Amendment).  Denial or refusal to process a prison grievance is not a constitutional violation.  *Rushdan v. Gear*, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16, 2018).

Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening or processing of his grievances or complaints.

### F.   Eighth Amendment – Deliberate Indifference to Medical Care

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

11

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff alleges that he was denied access to dental care because he was required to first sign a consent form that imposed "a kind of extra cost to access services—namely, . . . the compromise of one's integrity at the expense of preserving their health." (ECF No. 14, pp. 5–6.) The requirement that Plaintiff sign a consent form before receiving dental care does not constitute deliberate indifference to Plaintiff's serious medical need. Plaintiff's own choice to forego treatment to retain his "uncompromised integrity" does not provide a basis for Plaintiff to claim that any part of the CCM policy resulted in a purposeful act or failure to respond by Defendant or any medical staff to Plaintiff's medical needs.

Plaintiff has a constitutionally protected liberty interest in refusing unwanted medical treatment. *Cruzan by Cruzan v. Dir., Mo. Dept. of Health*, 497 U.S. 261, 278 (1990). On the other hand, "[w]hile it is clearly within [plaintiff's] rights to refuse medical treatment, he has no right to refuse treatment and then claim deliberate indifference to his medical condition." *McNeil v. Singh*, No. 1:12-cv-01005-RRB, 2013 WL 1876127, at *19 n.59 (E.D. Cal. May 3, 2013) (where plaintiff had declined surgery on at least two occasions and refused medication "because he felt that it was improper or medically harmful").

///

12

Plaintiff therefore fails to state a claim against Defendant for deliberate indifference to Plaintiff's medical needs.

### G.    Declaratory Relief

To the extent Plaintiff's seeks a declaratory judgment, it is unnecessary.  "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank of Lakewood Village*, 333 U.S. 426, 431 (1948).  "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).  If this action reaches trial and the jury returns a verdict in favor of Plaintiff, then that verdict will be a finding that Plaintiff's constitutional rights were violated.  Accordingly, a declaration that any defendant violated Plaintiff's rights is unnecessary.

### H.    Injunctive Relief

Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  In cases brought by prisoners involving conditions of confinement, any injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm."  18 U.S.C. § 3626(a)(2).

Moreover, where, as here, "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the status quo pendente lite, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Comm. of Cent. Amer. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986), quoting *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984).  Plaintiff's request for an order directing Defendant Galloway to amend the CCM as to all patients/inmates is not narrowly drawn and is not the least intrusive means necessary to correct the harms alleged.

13

**I.    Legal Fees**

With respect to Plaintiff's request for legal fees, Plaintiff is representing himself in this action and is not represented by an attorney.  As such, he is not entitled to recover attorney's fees even if he prevails.  *Gonzales v. Kangas*, 814 F.2d 1411, 1412 (9th Cir. 1987).

**VI.    Order and Recommendation**

For the reasons discussed, the Court finds that Plaintiff's first amended complaint fails to state a cognizable claim for relief.

"Under Federal Rule of Civil Procedure 15(a), leave to amend shall be freely given when justice so requires.  However, the district court may exercise its discretion to deny leave to amend due to undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of amendment." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citations and internal quotation marks and brackets omitted); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) ("[I]n dismissing for failure to state a claim under Rule 12(b)(6), a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (citation and internal quotation marks omitted)).

In light of the above discussion, as well as Plaintiff's prior decision to stand on his first amended complaint after being granted leave to file a second amended complaint, the Court finds that further leave to amend is not warranted.  *Lopez*, 203 F.3d at 1130.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for reconsideration or notice of appeal, (ECF No. 23), is DENIED, as moot;

2. The Clerk of the Court is directed to randomly assign a District Judge to this action.

* * *

Furthermore, IT IS HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

* * *

14

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 11, 2026**                    /s/ *Barbara A. McAuliffe*
                                                            UNITED STATES MAGISTRATE JUDGE

15